Filed 5/29/15  Amay's Bakery & Noodle Co. v. Hom CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AMAY'S BAKERY & NOODLE CO., INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LEUNG ON HOM, <br><br> Defendant and Respondent. | B256427 <br><br> (Los Angeles County <br> Super. Ct. No. BC484121) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge.  Affirmed.

Hart Watters & Carters, Thomas L. Watters and Roger N. Golden for Plaintiff and Appellant.

Mann & Zarpas, and Lloyd S. Mann for Defendant and Respondent.

_____

Amay's Bakery & Noodle Co., Inc. (Amay) claims that Asiacorp, Inc. is wrongly continuing to use and profit from its misappropriated trade secrets. In an earlier action, Amay obtained a permanent injunction barring Asiacorp from using Amay's trade secrets for a period of three years. Amay now challenges the grant of a summary judgment motion in favor of an individually named defendant, Leung On ("Jim") Hom. Jim Hom prevailed in a motion for summary judgment (MSJ) supported by evidence showing, among other facts, that he had retired from all Asiacorp business activities well before any of the alleged misappropriation activities involved in Amay's current action. Jim Hom's evidence showed that he did not participate in any of misappropriation activities tied to Asiacorp's alleged continuing wrongful use of Amay's trade secrets. As a result, we affirm.

## FACTS

### General Background

In the 1960's, Kee Hem Hom (not a party to the current appeal) started a Chinese food products business. In 1968, Kee Hom incorporated the business as Amay's Bakery & Noodle Co., Inc. In 1971, Kee Hom sold 50 percent of Amay's stock to his son, Jim Hom, the individually named party in the current appeal.

In 1980, Kee Hom retired from Amay, but retained his 50 percent ownership interest in the corporation. Jim Hom thereafter took "complete control" of Amay's day-to-day operations; he also acted as Amay's president, as well as chairman of the board.

At some time not ascertainable from the record, Jim Hom's son, Carson Hom, became involved in Amay. By the early 2000's, Carson Hom was Amay's corporate secretary.[1]

---

[1]     Carson Hom is not a party to the current appeal. Amay named Carson Hom as a defendant in Amay's current case; he defaulted on Amay's complaint.

*The First Lawsuit*

In 2001, Kee Hom, as a 50 percent owner of Amay, filed an action against Jim Hom (and Amay, as a nominal defendant).[2] Kee Hom's lawsuit alleged that Jim Hom, acting on his own and in concert with others, had embezzled large sums of money from Amay.

In October 2003, Amay removed Jim Hom as the corporation's president.[3] Then, in November 2003, Jim resigned as a member of Amay's board of directors. Although he was no longer an Amay officer or director, Jim Hom still retained his 50 percent ownership interest in the corporation.

In 2006, the trial court entered judgment in the first lawsuit. According to materials in the record, the judgment included a multi-million dollar award against Jim Hom.[4] The record indicates Jim Hom filed bankruptcy and a settlement was reached in late 2009 in the bankruptcy proceedings which satisfied the judgment. Under the terms of the settlement, Jim Hom surrendered all of his shares in Amay back to the corporation.

In summary, Kee Hom's embezzlement claims against Jim Hom, arising from his activities at Amay, were active from roughly 2001 into the fall of 2009, following which Jim Hom was completely out of the picture at Amay.[5]

---

[2] This lawsuit was assigned Los Angeles County Superior Court case number BC251520.

[3] During a deposition in June 2013, Jim Hom testified that "they found Leon Owen to vote me out [in October 2003]." We understand this testimony to mean that whomever controlled Amay's board of directors in the fall of 2003 voted to fire Jim Hom as the corporation's president.

[4] We do not see a copy of the 2006 judgment entered in the first lawsuit, number BC201520, in the record, an appellant's appendix.

[5] The present owner or owners of Amay are not ascertainable from the record, but this does not appear to be relevant to any issue in the current appeal.

*The Second Lawsuit*

In September 2002, when Kee Hom was still pursuing the first lawsuit, Carson Hom "secretly" started another Chinese food products business known as Asiacorp, Inc.[6] When Carson Hom started Asiacorp, he was still acting as Amay's secretary. By the end of 2002, Asiacorp began buying goods from Amay's suppliers, and selling Asiacorp's finished products to Amay's customers.

In September 2004, when Jim Hom was no longer acting as an Amay officer or director, but still owned 50 percent of the corporation's shares, Amay filed a lawsuit against Asiacorp, Carson Hom, and Janet Hom (Carson Hom's sister). Jim Hom, who was then still the object of an ongoing lawsuit initiated by Kee Hom, was not named in the suit. This lawsuit was assigned Los Angeles County Superior Court case number BC322221, and is commonly identified as the second lawsuit. This lawsuit alleged that Carson Hom controlled Asiacorp, and that Asiacorp, acting through Carson Hom and Janet Hom and others, misappropriated and was using Amay's trade secrets, including vendor lists, customer lists, direct business contacts, and many of Amay's recipes for various food products such as Amay's almond cookies. Amay sought damages, along with injunctive relief precluding Asiacorp, and its agents, including Carson Hom and Janet Hom, from using and financially benefiting from Amay's trade secrets.

The trial court issued a statement of decision in favor of Amay, and against Asiacorp, Carson Hom, Janet Hom and others. Thereafter, the court entered a judgment for damages and permanent injunctive relief in favor of Amay, and against Asiacorp, Carson Hom and Janet Hom.

The judgment enjoined Asiacorp, Carson Hom and Janet Hom "from contacting, soliciting or doing business with any person or entity which was, at any time prior to October 16, 2003, a customer of Amay[]." The judgment further enjoined the parties from "using, copying, disclosing, or otherwise exploiting . . . any information" which had

---

[6] The second company was initially under the name Triton International Enterprises, Inc. Asiacorp succeeded Triton. For purpose of clarity for the current appeal we use the identifying name of Asiacorp.

been in possession of "Amay[], its officers, directors, shareholders, employees or any person acting on its behalf," prior to October 16, 2003, "including, without limitation, information relating to its customers, suppliers, products, recipes, . . . or finances." The injunction was for a period of three years, beginning March 9, 2009.

Roughly six months after the judgment for a permanent injunction was entered in Amay's second lawsuit, Jim Hom surrendered his 50 percent share of Amay's stock back to the corporation.

***The Current Lawsuit, MSJ and Appeal***

Amay filed an action against Asiacorp, Carson Hom and Jim Hom, giving rise to this appeal. Amay's complaint alleges seven causes of action, listed respectively: unfair competition; misappropriation of trade secrets; violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 1700 et seq.); intentional interference with prospective economic advantage; money had and received; accounting; civil conspiracy, and violation of the judgment for permanent injunction entered in case the second lawsuit.[7]

Amay's complaint includes express allegations alluding to the two earlier lawsuits and explicitly alleges the following qualifying language concerning its claims as to defendant and respondent Jim Hom: "The events for which Amay[] seeks to hold Jim [Hom] liable postdate his . . . bankruptcy settlement [entered into on September 30, 2009]."

Asiacorp and Jim Hom filed a joint answer to Amay's complaint. Asiacorp and Jim Hom were jointly represented by the Law Offices of Mann & Zarpas. The clerk of the trial court entered defaults against the other two defendants who were named in Amay's action, namely, Carson Hom and Richway, Inc., which allegedly is a Nevada corporation.

---

[7] California law does not recognize a cause of action for civil conspiracy. (See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 45, p. 111.) Under our state's civil law, allegations and proof of a "conspiracy" may be employed to impose liability upon a defendant, but there must be a cognizable underlying civil claim. (*Ibid.*)

### *The MSJ and Continuance for Discovery*

Jim Hom filed a MSJ.[8]  The evidence in support of his MSJ consisted entirely of his own declaration in which he denied any involvement in Asiacorp after September 2009.  According to Jim Hom, he assisted Carson Hom "a number of years" earlier in establishing Asiacorp by investing money, but had "retired" in June 2008.  Jim Hom did acknowledge:  "I may still be listed as an officer of Asiacorp, and may, although I do not know, own shares in the company."  Despite this, Jim Hom asserted:  "I have no interest in the assets, if any, of [Asiacorp].  I have not, nor will I, benefit from Asiacorp."  The trial court initially set the MSJ for hearing in August 2013.

In early June 2013, Amay deposed Jim Hom in his capacity as an individual defendant.  During his deposition, Jim Hom's attorney acknowledged that Jim Hom "has always been the 100 percent shareholder of Asiacorp."

In mid June 2013, Amay's counsel served Asiacorp's counsel[9] with a notice of deposition of the person most knowledgeable (PMK) of Asiacorp.  In a series of ensuing e-mail exchanges, Asiacorp's counsel (who was also acting as Jim Hom's counsel) told Amay's counsel that Amay would produce Jim Hom for the PMK deposition, "despite his limited knowledge of [Asiacorp]."  Asiacorp's counsel advised Amay's counsel that Jim Hom was "[t]he only individual of whom [defense counsel was aware of] . . . who could testify . . . ."

In July 2013, Amay filed opposition to defendant Jim Hom's MSJ; the company's opposition predominantly consisted of a request for a continuance of the hearing on the MSJ pursuant to section 437c, subdivision (h), to allow for more discovery.  Specifically, Amay wanted to depose Asiacorp's PMK.

---

[8]     Jim Hom moved, in the alternative, for motion for summary adjudication of issues of each of Amay's causes of action.  Because the trial court granted summary judgment in his favor, we refer to Jim Hom's prevailing motion as a MSJ.

[9]     As noted above, defendant Asiacorp and defendant Jim Hom were represented by the same counsel.

In August 2013, the trial court granted Amay's request to continue the hearing on defendant Jim Hom's MSJ to allow further discovery. The court eventually set the MSJ for a hearing in December 2013.

Jim Hom appeared for the Asiacorp PMK deposition. During the deposition, Jim Hom testified that his son, Carson Hom, knew more about Asiacorp. Further, Jim Hom testified that he had talked to Carson Hom in September 2013, one month before the PMK deposition, but he did not ask him to testify as the PMK of Asiacorp. As stated by Jim Hom: "I did not think about it at that time." When asked whether he was still the sole shareholder of Asiacorp, Jim Hom answered, "Yes." He indicated he did not know any of Asiacorp's current officers or directors, and said Carson Hom would likely have more knowledge of the officers, directors and employees of Asiacorp.

Jim Hom testified that he could not explain whether "White Lotus" cookies purchased on October 17, 2013, at Ron Cheng Trading, were distributed by Asiacorp.[10] When questioned whether Carson Hom was closing Asiacorp, Jim Hom testified that Carson Hom "should know" about the matter. He further testified he did not know who funded Asiacorp's operations during the previous two years, and did not know who was paying rent and expenses, or buying goods.

Despite again admitting he owned all the shares of stock of Asiacorp, Jim Hom testified he did not know whether Carson Hom or anyone else was operating Asiacorp, did not know anything about the profits or losses, or who was selling White Lotus cookies to Amay's customers. Jim Hom testified that he did not know where any of the documents requested in the notice of the Asiacorp PMK deposition were and did not look for them. Jim Hom did not know Carson's Hom's phone number or his email address.

---

[10]     In case number B322221, the second case, the trial court had determined that White Lotus almond cookies were made by Asiacorp using Amay's recipe.

In November 2013, Amay filed a "first amended opposition" to Jim Hom's MSJ. Amay argued that Jim Hom's MSJ should be denied because he had stonewalled discovery, citing Code of Civil Procedure, section 437c, subdivision (i).[11] Further, Amay argued there were disputed questions of facts as to Jim Hom's involvement in Asiacorp, and Asiacorp's involvement in the continuing use of Amay's misappropriated trade secrets in violation of the terms of the judgment in the second lawsuit. Specifically, Amay presented evidence showing that its employees had purchased White Lotus almond cookies under the Asiacorp name from several of Amay's customers. There does not appear to be any disputed evidence on Amay's claim that Asiacorp had been violating the terms of the March 2009 judgment for a permanent injunction in the second lawsuit.

*The Ruling on the MSJ*

The trial court conducted a hearing on Jim Hom's MSJ. At the beginning of the hearing, the court provided an extensive written tentative ruling with an explanation of its reason for tentatively granting the MSJ. The parties argued the MSJ to the court, following which the court took the matter under submission. Thereafter, the court entered a minute order memorializing its decision to grant Jim Hom's MSJ, and signed an entered summary judgment in favor of Jim Hom.

Amay filed a timely notice of appeal.[12]

## DISCUSSION

### I. There Was No Violation of the Summary Judgment Statute

Amay contends the summary judgment in favor of Jim Hom must be reversed because Jim Hom stonewalled discovery and the trial court violated section 437c, subdivision (i), in granting his MSJ.[13] We disagree.

---

[11] All further section references are to the Code of Civil Procedure.

[12] On our own motion, we take judicial notice that the trial court entered a ruling in December 2014 granting Amay's application for a default judgment against Asiacorp, Carson Hom, and Richway, Inc. in the amount of $940,474.09.

[13] All further undesignated section references are to the Code of Civil Procedure.

8

Section 437c, subdivisions (h) and (i), provide:

"(h) If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

"(i) If, after granting a continuance to allow specified additional discovery, *the court determines that the party seeking summary judgment has unreasonably failed to allow the discovery to be conducted*, the court *shall* [1] grant a continuance to permit the discovery to go forward or [2] deny the motion for summary judgment or summary adjudication." (Italics added).

In its tentative ruling granting Jim Hom's MSJ, the trial court addressed Amay's discovery abuse claims as follows:

"[Amay]'s primary argument [against Jim Hom's MSJ] is that [Jim Hom] has stonewalled discovery. [Amay] contends that, although [Jim Hom] was designated the PMK for Asiacorp, he claimed to not have any information about Asiacorp's operations. [Amay] contends that [Jim Hom]'s son, Carson Hom, may have more information about Asiacorp, but that he has apparently left the county and allowed his default to be taken. However, if [Amay] actually believed that [Jim Hom] engaged in a discovery abuse, [Amay] could have moved to compel further discovery. The Court granted a continuance so that [Amay] could conduct additional discovery. [Amay] *has not shown that [Jim Hom] himself has been uncooperative*, or that any facts essential to oppose the [MSJ] could be obtained from additional

9

discovery. Thus, this 'stonewalling' argument is unpersuasive." (Italics added.)

Here, the trial court found Amay's claims that Jim Hom stonewalled discovery or had been uncooperative unpersuasive. In short, the court did not make a determination "that the party seeking summary judgment unreasonably failed to allow . . . discovery to be conducted" after an initial continuance for discovery pursuant to section 437c, subdivision (h). Because the court did not make a finding of a discovery abuse, the court was not required under section 437c, subdivision (i), to enter an order either denying Jim Hom's MSJ or granting a further continuance. For this reason, Amay's claim that the court violated a mandatory requirement to enter one of the two alternative orders prescribed by section 437c, subdivision (i), we find no error. In the absence of a predicate determination by the trial court that the movant for summary judgment, unreasonably failed to allow discovery, the mandatory orders prescribed by section 437c, subdivision (i), were not triggered.

Assuming one could construe Amay's opening brief on appeal to argue that the evidence is insufficient to support the trial court's finding that Jim Hom did not fail to allow discovery to be conducted, we reject Amay's argument. When presented with a claim of insufficiency of the evidence on appeal, we apply long-settled standards of review. We review a challenge to the trial court's factual findings under the substantial evidence test, presuming the record contains evidence sufficient to support the findings, examining the evidence in the light most favorable to the findings, and resolving any and all conflicts in favor of the findings. (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 540.) We infer that the trial court made every implied factual finding necessary to support its order and review those implied findings for substantial evidence. (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708.)

As Amay notes, the lawyer who jointly represented Asiacorp and Jim Hom initially indicated that he would not produce anyone to testify as Asiacorp's PMK, but eventually did make Jim Hom available for the deposition. Amay accurately tells us that, when testifying as Asiacorp's PMK, Jim Hom "did not provide any useful information

and repeatedly indicated that Carson [Hom] would be the appropriate person to appear as the [PMK] of Asiacorp . . . ."  Further, that Jim Hom testified he "did not know how to contact his son."  In Amay's perspective, Jim Hom's testimony at the PMK deposition was riddled with "feigned ignorance" regarding the whereabouts Carson Hom and regarding his lack of knowledge about Asiacorp's current operations.  In Amay's words, Jim Hom's testimony, in and of itself, "clearly indicate[s] a continuing and concerted effort to stonewall discovery that would show Asiacorp's illegal activities, including the involvement of [Jim] Hom in Asiacorp's activities."

If the factual issue before us was *Asiacorp*'s failure to allow discovery, we would find Amay's argument more persuasive.[14]  The record establishes that *Asiacorp* made available a PMK who testified that he did not know anything about Asiacorp, which supports the conclusion that *Asiacorp* failed to allow discovery.  However, the record shows that Jim Hom appeared for his own deposition, and the deposition of Asiacorp's PMK.  We do not see that the evidence shows — as a matter law — a discovery failure on the part of Jim Hom.  His testimony was that he does not know anything.  Being unaware of facts is not necessarily the same as being an obstructionist.

## II.      Summary Judgment Was Properly Granted

Amay contends the summary judgment in favor of Jim Hom must be reversed because the trial court erred in  granting summary judgment.  We disagree and affirm.

Summary judgment is warranted where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."  (Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment bears the burden of persuasion that one or more elements of the cause of action in question cannot be established or that there is a complete defense

---

[14]      Section 2025.230 provides:  "If the deponent . . . is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested.  In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent."

11

to the action.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)  Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact.  (*Silva v. Lucky Stores, Inc*. (1998) 65 Cal.App.4th 256, 261.)  "'[I]n order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish the existence of a triable issue of material fact on the issues raised by the plaintiff's causes of action.'  [Citation.]" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.)  The plaintiff must produce "substantial" responsive evidence sufficient to establish a triable issue of fact.  (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)  "[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact."  (*Ibid*.)

We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'"  (*Artiglio v. Corning Inc*. (1998) 18 Cal.4th 604, 612.)  "In independently reviewing a motion for summary judgment , we apply the same three-step analysis used by the superior court.  We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue."  (*Silva v. Lucky Stores, Inc., supra*, 65 Cal.App.4th at p. 261.)  We independently decide whether the undisputed facts warrant judgment for the moving party as a matter of law.  (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

We turn to the issues framed by the pleadings.  (*Turner v. Anheuser-Busch, Inc*. (1994) 7 Cal.4th 1238, 1252; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250.)  Here, Amay alleged that Jim Hom participated in the wrongful use of its misappropriated trade secrets by conspiring or aiding and abetting the activities of Asiacorp, Carson Hom or others in the wrongful use of Amay's trade secrets. In other words, Amay alleged that Jim Hom did acts to help Asiacorp and Carson Hom violate the judgment for a permanent injunction issued in the second lawsuit.

The main defense presented by Jim Hom's MSJ was that he retired in June 2008, and had no relationship with Asiacorp after that time, except as an owner of its stock. We agree with the trial court that Amay presented no substantial evidence to refute Jim Hom's showing. Given this context, we do not see any error in the decision to grant summary judgment in favor of Jim Hom.

## DISPOSITION

The summary judgment is affirmed. Each party to bear its own costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.

13