[No. B223639. Second Dist., Div. Four. Apr. 20, 2011.]

HTAY HTAY CHIN, Plaintiff and Respondent, v.
ADVANCED FRESH CONCEPTS FRANCHISE CORP. et al., Defendants
and Appellants.

**706**

**COUNSEL**

Masuda Funai Eifert & Mitchell and Grant A. Nigolian for Defendants and Appellants.

Steven F. Helfand and Marcus Daniel Merchasin for Plaintiff and Respondent.

OPINION

**EPSTEIN, P. J.**—Appellants Advanced Fresh Concepts Franchise Corp. and Advanced Fresh Concepts Corp. (collectively AFC or franchisor) appeal from an order denying their motion to compel arbitration of a lawsuit brought by a franchisee, respondent Htay Htay Chin (Chin or franchisee). AFC contends the arbitrator rather than the trial court must determine the validity of the arbitration provision in the franchise agreement that specifically delegates this task to the arbitrator in a clause. (We will refer to this as the delegation clause.) Chin argues the arbitration provision is unconscionable and hence unenforceable in an adhesion contract such as the one in this case. We conclude that, even if the delegation clause by itself is unconscionable, none of the other terms of the arbitration provision is, rendering moot the question about the delegation clause. Because the trial court erred in finding other terms of the arbitration provision unconscionable, we reverse its order denying the motion to compel arbitration.

## FACTUAL AND PROCEDURAL SUMMARY

AFC, a California corporation, is a sushi franchisor. Chin was a franchisee operating food service counters in Missouri under a 2002 franchise agreement with AFC. In 2007, the parties entered into a new franchise agreement, which is the subject of this appeal. The 2007 agreement contained a multipage arbitration provision (section 16.8), which begins with the following delegation clause: "Any dispute that arises out of or relates directly or indirectly to this Agreement or the relationship of the parties hereto, including, without limitation, any claimed breach of this Agreement or any claim that any part of this Agreement (including this Section 16.8 or any part thereof) is invalid, illegal, voidable or void, shall be resolved by arbitration . . . ."

On December 3, 2009, Chin filed a lawsuit against AFC in the Los Angeles County Superior Court, alleging breach of contract and other causes of action. AFC moved to compel arbitration. Chin opposed on the ground that the arbitration provision was unconscionable. The trial court denied the motion to compel, ruling that "[t]he arbitration agreement is unconscionable as it limits damages to actual or compensatory damages and elimination of [*sic*] equitable claims and defenses." The order is appealable. (Code Civ. Proc., § 1294, subd. (a).)

## DISCUSSION

### I

The parties proceeded below under California state law, and neither side argues the dispute is subject to federal preemption under the Federal Arbitration

Act (FAA) (9 U.S.C. § 1 et seq.), which applies to contracts in interstate commerce. Section 16.7 of the franchise agreement is a choice-of-law provision, specifying that California law shall govern all but one (here inapplicable) section of the agreement. We resolve their dispute under state law standards generally applicable to contracts. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

■ In general, arbitration agreements are enforceable, except when legal or equitable grounds exist to void a contract. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), citing 9 U.S.C. § 2; Code Civ. Proc., § 1281.) In California, petitions to compel arbitration are resolved in a summary proceeding. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061], citing Code Civ. Proc., §§ 1281.2, 1290.2.) The petitioner bears the burden of proving that an agreement to arbitrate exists, and the opponent has the burden of proving the facts of any defense to enforceability. (*Rosenthal v. Great Western Fin. Securities Corp.*, at pp. 413–414.)

Since unconscionability is a contract defense, the party opposing arbitration bears the burden of proving that an arbitration provision is unenforceable on that ground. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 [118 Cal.Rptr.2d 862].) Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence. (Civ. Code, § 1670.5; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [98 Cal.Rptr.3d 743] (*Parada*).) We review the court's resolution of disputed facts for substantial evidence. (*Ibid.*) When the trial court makes no express findings, we infer that it made every implied factual finding necessary to support its order and review those implied findings for substantial evidence. (*Ibid.*)

II

AFC contends that when an arbitration provision contains a delegation clause, as this one does, it is the arbitrator who decides whether the arbitration provision is unconscionable. AFC points to the recent United States Supreme Court decision in *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. ___, ___–___ [177 L.Ed.2d 403, 411–412, 130 S.Ct. 2772, 2778–2779] (*Rent-A-Center*), which, it argues, holds that the arbitrator must decide whether an arbitration provision is enforceable in cases where the parties have delegated that task to the arbitrator. The holding of *Rent-A-Center* is narrower than AFC suggests. *Rent-A-Center* was decided under the FAA, and its holding rests on the fact that the plaintiff had not challenged the unconscionability of the delegation provision of an arbitration

agreement in any of the courts below. (*Rent-A-Center*, at pp. \_\_\_–\_\_\_ [130 S.Ct. at pp. 2779–2780].) The superior court specifically declined to consider whether the delegation provision was unconscionable because the plaintiff brought this challenge too late. (*Id.* at p. \_\_\_ & fn. 5 [130 S.Ct. at p. 2781 & fn. 5].) It did not hold that the enforceability of a delegation provision was to be determined by the arbitrator in all cases. The California Supreme Court has declined to consider whether *Rent-A-Center* applies in state courts or whether California would adopt its narrow rule of severability as a matter of state law. (See *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 688, fn. 12 [121 Cal.Rptr.3d 58, 247 P.3d 130].) Whatever its applicability in general, *Rent-A-Center* does not aid us in this case.

██ Normally, the court decides the scope and validity of an arbitration agreement, including whether it is unconscionable. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) When the parties " 'clearly and unmistakably' " delegate issues of arbitrability to the arbitrator, the arbitrator, not the court, decides such issues as the scope of the arbitration agreement. (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 552 [21 Cal.Rptr.3d 322].) (See *Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286 [73 Cal.Rptr.3d 395] (*Bruni*); *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120] (*Murphy*); but see *Parada, supra*, 176 Cal.App.4th at p. 1565 [expressing concern about arbitrator's conflict of interest without deciding whether parties have right to delegate this task to the arbitrator].) However, courts have declined to uphold such delegation clauses when they appear in contracts of adhesion. (*Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 504 [79 Cal.Rptr.3d 471] (*Ontiveros*) [employment contract]; *Murphy, supra*, 156 Cal.App.4th at p. 144 [employment contract]; *Bruni, supra*, 160 Cal.App.4th at p. 1295 [home construction warranty].)

██ The judicially created doctrine of unconscionability, now codified in Civil Code section 1670.5, has both a procedural and a substantive element. They are applied on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.) The procedural element focuses on the contracting parties' unequal bargaining power and on the weaker party's lack of notice of hidden or oppressive terms; the substantive element focuses on the actual presence of one-sided or oppressive terms. (*Ibid.*) ██ An adhesion contract is indicative of procedural unconscionability because it is a standardized contract drafted by the party with greater bargaining power and offered to the weaker party on a take-it-or-leave-it basis. (*Id.* at p. 113.) Such a contract will not be enforced if its provisions are not within the reasonable expectations of the weaker party or if they are oppressive. (*Ibid.*) ██ A franchise agreement may have the characteristics of an adhesion contract

because of the franchisor's greater bargaining power. (*Postal Instant Press, Inc. v. Sealy* (1996) 43 Cal.App.4th 1704, 1716 [51 Cal.Rptr.2d 365].) But because a franchise agreement is made in a commercial context where arbitration "is quite common, and reasonably to be anticipated," absent "some special element of unfair advantage" an arbitration provision in a franchise agreement may be enforced though the agreement is adhesive. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 595 [183 Cal.Rptr. 360, 645 P.2d 1192], overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 17 [79 L.Ed.2d 1, 104 S.Ct. 852] [arbitration provision enforceable where franchisee was aware of it and of pamphlet referencing applicable rules].)

The trial court in this case did not expressly find the franchise agreement was a contract of adhesion or procedurally unconscionable, even though the parties submitted declarations on this issue. Nevertheless, since procedural unconscionability is an element of unconscionability (see *Armendariz, supra*, 24 Cal.4th at p. 114) and the trial court found the arbitration provision to be unconscionable, it implicitly found at least some procedural unconscionability. (See *Parada, supra*, 176 Cal.App.4th at p. 1567.) Chin's claim that the 2007 franchise agreement was presented to her on a take-it-or-leave-it-basis is based on AFC's regional managers telling her in substance that she had to execute it "as is" or lose the franchise. AFC did not dispute that it drafted the standardized franchise agreement or that it was in a superior bargaining position. AFC's vice-president asserted that regional managers were not responsible for procuring franchise agreements, and no one at AFC's headquarters presented the agreement to Chin on a take-it-or-leave-it basis. These assertions do not create a meaningful conflict in the evidence because they do not affirmatively establish that Chin was made aware of any right she may have had to negotiate or opt out of the arbitration provision, nor do they establish that she had such a right. There is no evidence whether Chin had reasonable alternatives in the franchise marketplace that would not have forced her into arbitration, but the availability of such alternatives is not a decisive factor. (See *id.* at p. 1573.) Substantial evidence supports the implied finding that the franchise agreement in this case has the qualities of an adhesion contract.

There is substantial authority that a delegation clause in an adhesion contract is unconscionable.[1] It has been held that such a clause is not within the adhering party's reasonable expectations since arbitrators are not normally

---

[1] Chin did not argue in the trial court that the delegation clause itself was unconscionable; the court simply assumed it had the authority to decide whether the case goes to arbitration. In her respondent's brief on appeal, Chin includes a challenge to the delegation clause as part of her challenge to what she perceives as the oppressive cost of arbitration—she argues that the arbitrator's decision regarding the fairness of his own fees violates due process. We asked the parties to brief whether the clause delegating to the arbitrator the task of determining the

expected to determine their own jurisdiction. (*Murphy, supra*, 156 Cal.App.4th at p. 145.) In addition, the delegation clause creates a conflict of interest for the arbitrator because "an arbitrator who finds an arbitration agreement unconscionable would not only have nothing further to arbitrate, but could also reasonably expect to obtain less business in the future, at least from the provider in question." (*Ontiveros, supra*, 164 Cal.App.4th at pp. 506–507.) But declaring the delegation clause unenforceable would serve no purpose unless some other term of the arbitration provision is unconscionable. As we shall explain, Chin makes no colorable claim that any other term of the arbitration provision is unconscionable. The trial court erred in concluding otherwise.

The trial court's decision not to enforce an arbitration provision is reviewed for abuse of discretion. (*Ontiveros, supra*, 164 Cal.App.4th at p. 515.) The trial court does not abuse its discretion if it refuses to enforce an agreement that is " 'permeated with unconscionability' " or needs to be augmented with additional terms, or whose central purpose is tainted by unconscionable terms. (*Ibid.*, citing *Armendariz, supra*, 24 Cal.4th at pp. 124–125.) We therefore review the terms of the arbitration provision, aside from the delegation clause, to determine if a colorable claim of unconscionability has been made.[2]

The trial court found two unconscionable terms. The first is the provision that "[a]ny award shall be based on established law and shall not be made on broad principles of justice and equity." The trial court found this language to be unconscionable because it eliminates equitable claims and defenses. That is not what the language says. It has been recognized that arbitrators generally have broad powers to fashion relief that is flexible, creative and fair, based on their own " 'honest judgment' " and " ' "good conscience" ' " rather than on " ' "dry law." ' " (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 [36 Cal.Rptr.2d 581, 885 P.2d 994].) When an arbitrator's powers are unrestricted by agreement, judicial review of the arbitration award must be narrow and deferential. (*Id.* at 376.) The language used in this case is an accepted way of limiting the arbitrator's

validity of the arbitration provision was itself unconscionable, and they have done so. (See *Ontiveros, supra*, 164 Cal.App.4th at p. 505, fn. 5 [allowing supplemental briefing on this legal issue].)

[2] AFC framed the issue on appeal as whether the trial court had authority to decide the validity of the arbitration provision, and Chin invites us to take this as a concession that the arbitration provision is unenforceable. We disagree. Despite the narrowly framed issue, AFC does not concede that the trial court's determination is correct, and both parties have reprised the arguments they made below regarding the validity of various terms in the arbitration provision. The prohibition against making new assertions in a reply brief is relaxed as to issues the respondent already has raised. (See *Laupheimer v. State of California* (1988) 200 Cal.App.3d 440, 459 [246 Cal.Rptr. 82]; *Fratessa v. Roffy* (1919) 40 Cal.App. 179, 188 [180 P. 830].)

broad powers and allowing judicial review on the merits of an arbitration award, (See *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1355 [82 Cal.Rptr.3d 229, 190 P.3d 586].) The limitation is not intended to bar cognizable equitable claims and defenses, and the trial court erred in deeming it unconscionable.

■ The second fault the trial court found is that the arbitration provision limits recovery to actual compensatory damages and does not allow for noneconomic and punitive damages. A damages limitation may be unconscionable if it contravenes public policy by limiting remedies available in the statute under which a plaintiff proceeds, or if it is one-sided. (See *Armendariz, supra,* 24 Cal.4th at pp. 103–104, 121.) Chin does not argue that the damages limitation in this case is against public policy, nor are damages available under the two statutes cited in her complaint: the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and the false advertising law (FAL) (Bus. & Prof. Code, § 17500 et seq.).[3] Chin argues that punitive damages are available for violation of Corporations Code section 31201 of the franchise investment law (Corp. Code, § 31000 et seq.). (See *Spahn v. Guild Industries Corp.* (1979) 94 Cal.App.3d 143, 159 [56 Cal.Rptr. 375] [punitive damages award upheld in case involving fraudulent sale of franchises under Corp. Code, § 31301].) But her complaint alleges no violation of that statute, nor does she claim that she could amend her complaint to allege such a violation. The damages limitation is facially mutual, and there may be cases in which a franchisor seeks to vindicate its own statutory rights against a franchisee. (See, e.g., Civ. Code, § 3426.3 [California's Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) provides for exemplary damages for willful and malicious misappropriation of trade secrets].)

The trial court correctly rejected Chin's argument that the injunctive remedy exception in the arbitration provision is one-sided because it includes the parties' consent to the issuance of an injunction for "any failure to immediately cease operation, vacate the location of the operation or cease the use of intellectual property"—that is, whenever the franchisor, rather than the franchisee, seeks injunctive relief. The injunctive remedy exception allows "a party" to go to court for "injunctive or other provisional relief." It does not provide "a choice of forums [solely] for the claims of the stronger party." (*Armendariz, supra,* 24 Cal.4th at p. 119.)

Chin's principal argument, which the court rejected, is that the cost of arbitration was prohibitive and therefore unconscionable. The argument is

---

[3] The UCL limits the prevailing party to injunctive relief and restitution. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 [31 Cal.Rptr.2d 29, 63 P.3d 937].) The FAL limits private individuals to injunctive relief. (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 875 [27 Cal.Rptr. 110, 544 P.2d 1310].)

premised on a term in the arbitration provision requiring use of three arbitrators instead of one, if the alleged damages exceed $150,000. The complaint alleges damages in the amount of $1 million. Chin relies on *Parada*, a lawsuit by investors, where the court found there was no justification for a three-arbitrator panel; the cost of a four-day arbitration, estimated to total $41,600 for losses ranging from $44,000 to $130,000, was prohibitive; and the investors had declared their inability to pay for arbitration. (*Parada, supra*, 176 Cal.App.4th at pp. 1560, 1581–1584.) *Parada* did not arise out of a franchise agreement, but it cited with approval *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396, 415–416 [4 Cal.Rptr.3d 659], which applied a cost-shifting analysis developed in employment and consumer cases to a franchise arbitration agreement. (*Parada, supra*, 176 Cal.App.4th at p. 1580.) *Parada* is distinguishable for several reasons.

AFC offered to waive the three-arbitrator requirement in Chin's case before it moved to compel arbitration, and counsel confirmed this waiver at oral argument. Thus, whether the waived requirement is unconscionable is probably a moot point. Even were it not moot, the three-arbitrator requirement is not unconscionable. In contrast with *Parada*, where the use of three arbitrators was completely unjustified, the three-arbitrator requirement in this case is limited to damage claims above $150,000. AFC reasonably justifies the requirement as providing a measure of protection against exaggerated damage claims.

The record on appeal in *Parada, supra*, 176 Cal.App.4th at page 1580, included the relevant JAMS rules, procedures, and fee schedules, based on which the court could determine that the costs of arbitration were prohibitive. (*Ibid.*) The record on appeal in this case includes only several pages of an administrative fee schedule excerpted from the commercial arbitration rules of the American Arbitration Association (AAA). It does not include a schedule of arbitrator fees or a complete set of the commercial arbitration rules. In addition, AFC concedes the arbitration agreement does not require that arbitration take place before the AAA, only that it proceed according to the AAA commercial arbitration rules. In *Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1215 [6 Cal.Rptr.2d 168], the court concluded that the AAA commercial arbitration rules required arbitration before the AAA. (Cf. Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2010) ¶ 5:26.10, p. 5-18 [unless the agreement provides otherwise, the selection of a particular alternative dispute resolution provider's rules works as an implied agreement that the provider administer the arbitration].) Because the applicable AAA rules are not in the record, we cannot determine whether they require arbitration before the AAA. But we accept AFC's concession, which counsel confirmed at oral

argument, that Chin is not required to arbitrate before the AAA. On the record before us, we cannot conclude that Chin will incur prohibitive fees in arbitration.

The trial court did not rule on Chin's challenges to three other terms of the arbitration provision, but they do not raise colorable claims of unconscionability. The confidentiality term of the arbitration provision states that "[e]xcept as may be required by law, no party or arbitrator(s) may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties." Chin cites the unfairness of the "repeat player effect," where an employer derives an advantage from repeatedly appearing before the same arbitrators. (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 178–179 [16 Cal.Rptr.2d 671].) She does not address the significance of the two limitations placed on the breadth of the confidentiality provision in this case—that it does not apply when disclosure is required by law[4] or when the parties have provided prior written consent.

The arbitration provision allows an award of fees and costs for "all claims," and limits their amount to one-third of any compensatory damages awarded, or in the case of a successful defense to one-third of "the greatest total amount claimed as damages at any point during the arbitration." Chin claims this facially mutual provision is "blatantly one-sided" and intended to dissuade the pursuit of claims because it limits the amount of recoverable attorney fees. She does not argue that she is otherwise entitled to recover her attorney fees. (Cf. *Armendariz, supra*, 24 Cal.4th at pp. 103–104 [statutorily available attorney fees recoverable in arbitration].) She also claims that the class action waiver in the arbitration provision is unconscionable but admits that it is not applicable in her case. (Cf. *Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 649–650 [14 Cal.Rptr.3d 449] [to be deemed unconscionable, class action waiver must act as "an exculpatory clause or unduly hinder[] plaintiffs from pursuing a legal remedy"].)

---

[4] For instance, Code of Civil Procedure section 1281.9, subdivision (a) requires a proposed neutral arbitrator in an arbitration pursuant to an arbitration agreement to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." Among the matters to be disclosed are "[t]he names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any." (Code Civ. Proc., § 1281.9, subd. (a)(4).)

■ Because Chin advances no other colorable unconscionability claim, we conclude that, even if the delegation clause of the arbitration provision, by itself, were unenforceable, the trial court nevertheless erred in refusing to compel arbitration.

## DISPOSITION

The order denying the motion to compel arbitration is reversed. Appellants to have their costs on appeal.

Willhite, J., and Suzukawa, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 29, 2011, S193444. Corrigan, J., did not participate therein.